# Wheeling.

MADISON McDANIEL *et al. vs.* LEWIS BALLARD, SHERIFF.

### January Term, 1870.

No appeal lies to this court from the order of a judge of the circuit court refusing an injunction. Nor was such the law under the Code of Va. of 1860.

The statement of the question arising in this case appears in Judge Maxwell's opinion. The case came from Monroe county. The injunction was refused by the court below in November, 1866, and the appeal allowed by one of the judges of this court was dated in December following.

Hon. N. Harrison, judge of the circuit court of Monroe county, refused the injunction below.

*Boggess* for the appellants.
*Attorney-General Caldwell* and *Newlin* for the appellee.

MAXWELL, J.  McDaniel and others presented an application to the judge of the circuit court of Monroe county for an injunction to enjoin and restrain Lewis Ballard, the sheriff of said county, from collecting certain taxes assessed upon the real estate of that county. The judge, upon hearing the application in vacation, refused to award the injunction prayed for; whereupon an application was made in conformity to law to one of the judges of this court, who also refused to award the injunction. A petition was then presented to one of the judges of this court for an appeal

COURT OF APPEALS OF WEST VIRGINIA.          197

Jan'y Term,          McDaniel *et al.* vs. Ballard, Sheriff.          1870.

from the order of Judge Harrison, the circuit judge, disallowing the injunction prayed for, which appeal was allowed. The case is now submitted to this court without any assignment of error, and without argument, for decision. The first question which occurs to my mind upon looking into the record, is one as to the jurisdiction of this court to entertain an appeal from an order made in vacation, refusing to award an injunction. The appeal in this case was allowed on the 17th day of December, 1866.

As the law was at that time, the application for the injunction might have been made to any judge of any circuit in the State, or successively to all the circuit judges of the State, and upon the refusal of any one or all the circuit judges to award it, the application might have been made to any one or more of the judges of this court in vacation, collectively or individually. Code of Va., 1860, ch. 179, §§ 6 & 7, p. 737.

So that, as the law then was, it was within the power of the applicants for this injunction to have obtained the opinion of every judge within the State on the merits of their application, and, if any judge could have been found concurring with them, to have obtained from him an injunction.

They did not, however, pursue the course open to them, but on their application being refused by one circuit judge and one judge of this court, appealed to this court. Has this court jurisdiction of the case? The second section of chapter 182, p. 745 of the Code of Virginia of 1860, provides that, "a person who is a party * * * to any case in chancery wherein there is a decree or order dissolving an injunction or requiring money to be paid, or the possession or title of property to be changed or adjudicating the principles of the cause," may appeal.

The case does not come within the description of any of the cases described in this section, on which an appeal may be taken. It is proper to notice that, since the appeal was obtained in this case, the foregoing section has been changed by an amendment changing the section so as to read:

"Granting or dissolving an injunction," and, as amended, will probably be found in the Code of this State when published.

The law in force at the time the order was made refusing the injunction, and when the appeal was taken, will govern this case, and the amendment is only referred to for the purpose of showing that, while the legislature was enlarging the grounds for appeal to include orders or decrees granting injunctions, it did not include orders or decrees refusing to grant injunctions.

This case comes here on an appeal without a supersedeas, and is nothing more, in fact, than a naked application to this court for an injunction, which it has no jurisdiction to award, though it may reinstate an injunction improperly dissolved.

If there had been a supersedeas also, it would not change the case. A supersedeas would have nothing to operate upon, except to prevent proceedings under the order refusing the injunction, under which no proceedings were designed or could be taken. The appeal does not and cannot operate as an injunction, and would not, therefore, if allowen, afford any adequate remedy in a case where an injunction is necessary, because before an appeal could be heard the mischief would be done which the injunction was intended to prevent. But the remedy afforded by the law is complete without an appeal, as before stated, by application to any one or to all the judges of the State. The remedy is, in fact, more extensive and complete than in any other class of cases, because, in no other case does the law provide for the hearing of a case before any but the judge of the circuit who may try it, and in case of appeal before the judges of the court of appeals.

But whatever may be the reason for it, I think it plain that the legislature has not given this court jurisdiction of this case, or of cases similar to it, and that the appeal ought to be dismissed for want of jurisdiction, with costs to the defendant in error.

BROWN, *President, dissentiente.*

The first question to be determined is, whether an appeal will lie from the order of a circuit judge, made in vacation, refusing to allow an injunction which has also been presented to a judge of the supreme court of appeals, and also refused by him.

The Constitution, article 6th, sec. 1, vests the judicial power of the State in the supreme court of appeals and circuit courts, and such other inferior tribunals as are therein authorized; and by the 8th sec. of same article the supreme court of appeals is given appellate jurisdiction in civil cases over 200 dollars. A bill of injunction to restrain the collection of the taxes of an entire county, and to avoid the levy and the assessment on which it was made presented to the judge of the circuit court, and the injunction refused, and then presented with the refusal thereon endorsed, as provided by law, to a judge of the supreme court of appeals, and by him, in like manner, refused, is certainly a civil case within the meaning of the Constitution; and again, by the second sec. of chap. 182, of the Code, 1860, a person who is a party to any civil case, wherein there is a final decree or order, may present an appeal to the court of appeals from such decree or order. Here, then, is a civil case within the meaning of this statute, and the order refusing the injunction is a final order, which adjudicates the case and precludes the party from the relief prayed for, and is equivalent to a decree in court dissolving an injunction and dismissing the bill. It is, therefore, clearly within the letter and meaning of the statute. But that statute also allows an appeal from an order dissolving an injunction merely. The order in question does not, in terms, dissolve an injunction, but it refuses to award one, which is equivalent, and, in effect, is the same, and is, therefore, within the equity of the statute.

But it is objected that the statute only applies to orders of the court, and not to an order of refusal by a judge in vacation. Whether the order be made in the one way or

the other, it is by the same judicial person, acting in his judicial capacity, and by the same authority of law, and has the same effect upon the rights of the party; and it would seem like a mockery of justice and equality to allow an appeal in the one case and not in the other. But the statute in the 1st Rev. Code of 1819, chap. 66, sec. 44, p. 205, which is continued substantially in the Code of 1860, chap. 182, sec. 2, also authorized an appeal to be granted by any judge of the court of appeals, from the order of refusal by the circuit judge, whether that refusal was in court or out of court; and this latter provision of the statute of chap. 66, sec. 44, of the Code of 1819, is substantially continued in the more general provision on the subject of appeals : Code of 1860, chap. 182, sec. 10. The statute in the Code of 1819, was specific. The statute in the Code of 1860 is general and comprehensive, embracing in fewer words not only the provisions of sec. 44, chap. 66, of the former Code, but many other provisions of like character and kindred nature.

The former provided that, whenever the circuit judge should overrule any application for an injunction, the party aggrieved might apply to a judge of the court of appeals, who was authorized to allow the injunction, or to allow an appeal to the court of appeals from the order of refusal by such circuit judge. Applying, then, the principle declared in *Parramore* vs. *Taylor*, 11 Grat., 220, that in construing the Code of 1849, (and likewise of 1860,) the rule of construction is, that the old law was not intended to be altered, unless such intention plainly appears, I have no difficulty in maintaining the jurisdiction and appeal in this case; for no manifest intention plainly appears, to alter the old law, because, in codifying and condensing the scattered acts of many years preceding, general terms are used in the Code of 1860, which embrace each particular of the different acts and provisions, on the same and kindred subjects. See, also, *Mulligan's case,* 4 Wal., 110, where an application for a writ of *habeas corpus,* was held to be a suit, and a refusal to award it, was a judgment to be reviewed and corrected.

Upon the merits of the case, I think the order of the judge of the circuit court, refusing the injunction, ought to be affirmed, for the reason that it must be a clear case to warrant an injunction suspending the collection of the land tax throughout the whole county. The bill alleges no special injury, and the injunction, if allowed at all, must operate as an entirety. Under the act of February 25, and March 2, 1864, the assessors, Prentice and Hunter, were properly appointed by the Board of Supervisors. It is alleged that in making their assessments of taxes for 1865 and 1866, they adopted the assessment book of Virginia for the year 1856. This was right: it was the last and only assessment of lands they had to be governed by. By the 77th section, act of 1863, chapter 116, page 172, (there being no land tax book for the previous year,) they were required to make out books for 1865 and 1866, according to the rate of tax or levy "which then existed," which was regulated by the assessment of 1856. This was substantially done. True, the assessors carried with them (to be exhibited, whenever called for,) the confederate land books of 1861 and 1863, which this court does not recognize as made out by competent officers or competent authority; but it is equally true that those books were but transcripts from the assessment book of 1856, (which is authority here,) and from which they differed not in the valuation of lands, but only in such change of ownership as had occurred since 1856. This was substantially adopting as the basis of their valuation, the land book of 1856, which might alone have been exhibited and adopted by the assessors, subject to such changes or transfers of title as had since been made. Under the act of 1863, page 177, there was no irregularity in this. If there were, and although it might subject the assessors to the penalties prescribed by law for not carrying and exhibiting the proper book, or any book at all, in making their assessment, still it could not vitiate their assessment at least, except as to those who had thereby sustained special injury, and who, in that case, as to themselves, might, perhaps, obtain relief from the court, either

by injunction or writ of prohibition, unless relief in such case is limited by section 100, page 176, act 1863, to Board of Supervisors. (See act of 1863, chap. 118, page 176.)

The assessment of 1856 was that by which all the taxes from that time to 1866, were made throughout all the other counties in the State, and by which they paid the taxes due from them.

The change in values wrought by the war bore as heavily upon other counties which paid the taxes as upon the county of Monroe, which did not pay, and which was subsequently released by the legislature from the delinquent taxes from 1861 to 1864, inclusive. There was no law authorizing the taxes of Monroe or any other county to be assessed by any other valuation than that made under the law of 1856, which was in effect done in this case, and is the grounds of objection by the appellants. Order affirmed with costs to the appellee.

Judge Berkshire concurred with Maxwell, J.

APPEAL DISMISSED.